NORMAN HENRY STAPLES *v.* STATE COMPENSATION COMMISSIONER

(No. 9610)

Submitted September 6, 1944. Decided September 19, 1944.

*Mahan, Bacon & White,* for appellant.
*Hillis Townsend,* for appellee.

LOVINS, JUDGE:

This statutory appeal from an order of the Workmen's Compensation Appeal Board presents one question for decision: Is the claimant, Norman Henry Staples, suffering from first or second stage silicosis, as such disease is defined by Section 7, Chapter 79, Acts of the Legislature, 1935?

Claimant was formerly employed by The New River Company, having worked for that company for about twelve years in four different mines. He was inducted into the military service of the United States of America in May, 1942, and was discharged therefrom approximately seven and a half months later suffering from silicosis. After his discharge from the military service he secured employment as a taxi-cab driver, having been advised that he should not work in a mine. Claimant applied for compensation benefits on the ground that he was suffering from the disease of silicosis. The Compensation Commissioner made findings on the non-medical questions as required by Section 11, Chapter 79, Acts of the Legislature,

1935, and referred the case to the silicosis medical board. The findings of the commissioner and reference to the board are not questioned on this appeal, hence a statement of facts on which the commissioner acted in making such findings and reference is unnecessary.

The silicosis medical board, after examination and investigation, reported to the commissioner its findings and conclusions thereon, and thereupon the commissioner awarded claimant compensation benefits in the sum of one thousand dollars as for silicosis in the second stage. Written and timely objections to the findings and conclusions of the board and the award of the commissioner were filed by the employer, and a hearing was held in accordance with Section 14, Chapter 79, above mentioned. The three members of the silicosis medical board and two other physicians who examined claimant for the employer were examined and cross-examined at the hearing so held, and it was developed that claimant suffers from shortness of breath, asthmatic sounds in his chest, and limited chest expansion. X-ray of claimant's chest showed nodular formations in the middle two-thirds of his lungs. One member of the board stated that he was of the opinion that silicosis in any stage impaired the capacity to work in a person suffering from that disease. Two members of the board are of opinion that their examination demonstrated physical signs of silicosis in the second stage, one of whom relied entirely on the condition of the lungs as shown by X-ray. The two physicians who testified on behalf of the employer were of the opinion that claimant was suffering from first stage silicosis rather than second stage of that disease, basing their conclusion on X-ray examination, and their inability to demonstrate impairment of claimant's capacity to work. After the hearing the Commissioner affirmed his former finding, and on appeal to the Workmen's Compensation Appeal Board, the order of the commissioner was affirmed. This appeal followed.

Employer takes the position that there are no definite and specific physical signs of silicosis unless the X-ray examination may be so considered, and, second, that impairment of claimant's capacity to work is not shown.

Three stages of silicosis are defined by statute. We quote that part of the statute defining the first and second stages:

> "An employee shall, for the purposes hereof, be deemed to have silicosis: (1) In the first stage when it is found by the commissioner that the earliest detectable specific signs of silicosis are present, whether or not capacity for work is or has been impaired by such silicosis; (2) In the second stage when it is found by the commissioner that definite and specific physical signs of silicosis are present, and that capacity for work is or has been impaired by that disease; * * *".

Section 7, Chapter 79, Acts of the Legislature, 1935.

The appellant employer inveighs against the use of X-ray as sufficient to show the "definite and specific physical signs" of the disease required by the statute above quoted. We do not agree with that contention. The X-ray is of great value in the medical science, and affords a basis for a reasonably definite diagnosis of certain diseases with which persons are afflicted.

An applicant for silicosis benefits is required to submit to examination by X-ray, if required by the silicosis board. Section 13, Chapter 79, Acts of the Legislature, 1935. Reports of examination by X-ray made by physicians acting on behalf of a claimant or his employer, if in possession of either or under his control, are required to be produced as evidence on reference to the board, and the board is required to file such reports with the commissioner. Sections 13-14, Chapter 79, Acts of the Legislature, 1935. It is quite clear from a casual reading of the statute that the legislature attached importance to the use of X-ray in ascertaining whether a claimant for compensation benefits on account of a silicotic condition of the lungs is actually suffering from that disease. The use of X-rays in examination of persons allegedly suffering from silicosis is indicated by the following:

"The changes within the lung upon inhalation of minute silica particles, due to their destructive action, may best be demonstrated during life by the x-ray."

Attorneys' Textbook of Medicine, 2d Ed., Gray, page 1068. The use of X-ray to determine the condition of the internal organs of living persons is a means to an end rather than the end itself. The roentgen photographs obtained by the use of such rays is a portrayal of the physical condition which become definite and specific physical signs to a person experienced and learned in the science of roentgenology.

Without taking into consideration the statutory definition, there is convincing evidence appearing in this record that from pathological standpoint there is a marked difference in the appearance of the lungs of a person suffering from silicosis in the first stage and those of a person suffering from that disease in the second stage. It suffices to say that the X-ray examination of the claimant demonstrates definite and physical signs of silicosis in its second stage, but the second statutory requirement, relating to the impairment of capacity to work does not appear from such examination, nor does it necessarily follow that such impairment exists by reason thereof. However, we are of the opinion that sufficient definite and physical signs of silicosis may, in some instances, appear from an X-ray examination and show the disease as sufficiently advanced that impairment of working capacity is clearly indicated, but such is not the case here. The existence of definite and specific physical signs of silicosis alone are not sufficient to entitle a claimant to compensation for second stage silicosis. There must be in addition to such physical signs an impairment of capacity to work, which condition under well-settled rules must be shown by claimant. It is true all members of the board testified that in their opinion claimant's capacity to work was impaired, one member of the board stating that in his opinion a person suffering from any stage of silicosis suffered such im-

pairment. The other members of the board gave a generalized opinion that claimant's capacity for work is impaired, basing such opinion on the condition of claimant's lungs as disclosed by X-ray. But no impairment such as lack of energy, lassitude, serious shortness of breath, or other physical impairment is shown. The two physicians who testified on behalf of the employer stated that he suffered no impairment in his working capacity.

We do not mean to say or imply that impairment of working capacity cannot be shown solely by X-ray, but we are constrained to say that such impairment must be shown to be substantial and practical rather than slight and theoretical. It is probably correct from the scientific standpoint to say that any disease in its earliest stages diminishes the working capacity of the person afflicted therewith, but we think that when measured by the plain import of the statute such capacity as may have been possessed by a person prior to the onset of the disease must be so lessened that the afflicted person is in a measure disabled from doing the work he was theretofore capable of doing. Of course, the statute does not require that a person be totally disabled from doing any work, but it must appear that claimant's capacity for work is or has been actually impaired in such degree as to lessen the ability of a person to perform the duties incident to ordinary work.

The impairment of claimant's capacity to work is not definitely shown by the record herein. It is true that witnesses state their conclusions that claimant's capacity for work has been and is impaired, but no sufficient factual premise for such conclusion is stated. Claimant having failed to show that his capacity for work is impaired, we reverse the order of the Compensation Appeal Board for that reason alone and remand the proceedings for further development of that phase of proof.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

In the early development of silicosis cases the indispensable use of the x-ray as an aid to diagnosis is well known.

The employer contends that the "definite and specific physical signs", required by (Michie's) Code, 23-6-7, as an element of silicosis in the second stage, as distinguished· from the "earliest detectable specific signs", the phrase used in the same section in defining silicosis in the first stage, cannot be established by the introduction of x-ray photographs *alone* and without further evidence. That the x-ray is the means of disclosing the "earliest detectable specific signs" of silicosis in the first stage, and if additional or other evidence were required to establish the second stage, the distinction between the two stages would be freed from an uncertainty which otherwise exists, is, as I understand it, the appellant's position. The employer contends that to permit both stages to be shown by the *sole* use of x-ray pictures gives the Medical Board a well nigh arbitrary power, independent of any other showing, to classify the cases as between the first and second stage. In such cases this function could be performed only by considering the degree of proof shown by the pictures.

By the use of the word "signs" (an objective evidence of disease) in the medical definition of both the first and second stages, it would seem plain that the legislature did not wish to permit either to be shown by what are usually called subjective symptoms or indications observable by the patient only. Under the wording of the statute the principal difference between the first and second stages seems to rest upon the word "detectable" as describing the signs of the first stage, and the word "physical" to designate those of the second stage. Certainly the x-ray would show the latter and, possibly, the former. If the appellant's view is rejected, it would seem that unless the definitions of the two stages are to be held indefinite and uncertain,· the effect of the evidence must be left to the determination of the Medical Board. That is where the Court's opinion, to my mind, leaves it, and with that conclusion, which to me seems the only manner of deciding that the definitions are sufficient, I concur. If the pictures disclose only signs that could not be discovered without them, the finding may be silicosis in the first stage; if signs

are shown by the pictures alone that might have been otherwise established, they may be classified as "physical", justifying a second stage finding. It does not follow that because a sign is shown by an x-ray picture that it is not physical.