LOUIE TOTEDO *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9679)

Submitted January 30, 1945. Decided February 20, 1945.

*Theodore C. Waters* and *Arthur S. Dayton,* for appellant. *John A. Cain,* for appellee.

RILEY, JUDGE:

The Davis Coal and Coke Company appeals from an order of the Workmen's Compensation Appeal Board, affirming an order of the State Compensation Commissioner entered on April 21, 1944, affirming its order of March 1, 1944, awarding claimant, Louie Totedo, compensation for silicosis in the second stage.

The record shows, and the employer admits, that claimant has compensable silicosis. The sole question presented

here is whether claimant has silicosis in the first or second stage.

Claimant, thirty-seven years of age, was employed by The Davis Coal and Coke Company at its coal mines from January 12, 1923, to October 29, 1943, the date of his last exposure to silicon dioxide dust in harmful quantities. Evidently distressed by shortness of breath and weakness, he voluntarily ceased work on October 29, 1943, submitted himself for examination to Dr. J. L. Miller, of Thomas, West Virginia, and went to Hopemont Sanitarium at Hopemont, West Virginia, where it was found that he had silicosis in a "moderately advanced stage". He was advised that he should not engage in any employment where he would be exposed to dust. From January 6, 1944, to and including the time of the hearing before the commissioner, except for the time consumed in medical examinations, he was steadily employed by the same employer in somewhat strenuous labor outside the mine where he was last employed. On January 6, 1944, Dr. Miller filed a report with the commissioner in which he described claimant's condition as "moderately" advanced silicosis. Claimant was examined for the employer on December 9, 1943, by Doctors Cowherd and Rathbone of Cumberland, Maryland, which examinations included the use of X-ray. They reported to the commissioner to the effect that claimant had silicosis in the first stage.

At the direction of the commissioner claimant presented himself to the West Virginia Silicosis Board for examination. At the hearing before the board Dr. J. Bankhead Banks and Dr. E. W. Squire, who had examined claimant at the instance of the employer, filed reports which stated that claimant had silicosis without disability. To the commissioner's order awarding compensation in the sum of one thousand dollars, based upon the medical board's report that claimant had silicosis in the second stage, employer filed objection and a hearing was had. Doctors Grisinger, Stewart, and Davidson, members of the board, testified at the hearing in support of the board's finding that claimant had silicosis in the second stage. Doctors

Banks and Squire, called by the employer, testified that claimant had silicosis without attendant disability.

The history given by claimant to the examining physicians is to the effect that the work outside the mine was not comfortably tolerated and produced some embarrassment in the nature of shortness of breath. Dr. Grisinger, chairman of the board, testified that claimant had a history of general weakness and shortness of breath. He testified that the board gave claimant a complete physical examination, including X-ray study of the chest, together with examination of claimant's pulse, temperature, blood pressure and sputum. An exercise tolerance test made by the board disclosed:

Before exercise:           Pulse 76  Respiration 22
After exercise:            Pulse 98  Respiration 50
After two minutes rest: Pulse 80  Respiration 28

The board's examination further disclosed that claimant's chest expansion was one and one-half inches, which Dr. Grisinger said was not normal. According to Dr. Banks' testimony, the expansion was one inch. Doctors Banks and Squire also took a tolerance test which showed:

Before exercise:             Pulse 78  Respiration 20
After exercise:              Pulse 90  Respiration 24
After three minutes rest: Pulse 72  Respiration 20

In view of the commissioner's finding and the order of the appeal board, we think the results of the tolerance test taken by the board in this case should be adopted.

There was a fine fibrosis throughout both lungs, which according to Doctors Cowherd and Rathbone, was due to an early stage of nodular silicosis.

In answer to an inquiry on cross examination, "Do you believe, Dr. Davidson, that an affirmative diagnosis of silicosis presupposes disability?", Dr. Davidson answered, "Theoretically, it does. Practically, it doesn't." Dr. Stewart testified in part: "To my mind at this time, actual measurement of vital capacity can't be used as a part of classifying these cases, because of this inconsistency which

I have mentioned in the experience of others, although I believe, personally, that very frequently it is there. I don't believe it is to be used actually as a measurement, * * *." From this it seems that the medical board did not take the loss of vital capacity, which theoretically results from silicosis where only the earliest detectible specific signs of silicosis are present as determinative that the capacity for work has been impaired.

Employer's counsel assert that this case is "virtually parallel to the record and testimony" in *Staples* v. *State Compensation Commissioner*, 127 W. Va. 49, 31 S. E. 2d, 433, in which this Court reversed the order of the appeal board allowing compensation for silicosis in the second stage, and held that claimant had silicosis in the first stage. There the record, like the one before us, disclosed that plaintiff had silicosis, but the record in that case does not disclose that the medical board made the specific tolerance test shown in this record, and the employer's physician testified in the *Staples* case to the following results of a tolerance test:

| | | |
|---|---|---|
| Before exercise: | Pulse 74 | Respiration 22 |
| After exercise: | Pulse 84 | Respiration 24 |
| After two minutes rest: | Pulse 74 | Respiration 22 |

The difference in the results of the tolerance tests taken in the two cases furnishes a basis for distinction, and further it is to be noted that Staples ceased work at the place of his last exposure to silicon dioxide dust because he was inducted into the military service, from which he was discharged approximately seven and a half months later because of a physical condition resulting from silicosis, accompanied by heart disease. Claimant here was so distressed with shortness of breath and weakness that he voluntarily ceased work, and submitted himself for examination at Hopemont, in the belief that he may have had tuberculosis. He did so because, in our opinion, he actually experienced an impairment in his capacity to work. Unlike Staples, his silicotic condition was not attended by a heart condition, which of itself may cause shortness of

breath. This case, we think, should be distinguished from the *Staples* case upon a factual basis.

We are unable to say that the commissioner and appeal board were clearly wrong. We therefore affirm the commissioner's finding and the order of the appeal board.

*Affirmed.*